[This decision has been published in *Ohio Official Reports* at 95 Ohio St.3d 165.]

NORGARD ET AL., APPELLANTS, *v*. BRUSH WELLMAN, INC., APPELLEE.

[Cite as *Norgard v. Brush Wellman, Inc.*, 2002-Ohio-2007.]

*Employer and employee—Intentional tort—Cause of action based upon an employer intentional tort accrues, when.*

(No. 2001-0063—Submitted January 30, 2002—Decided May 8, 2002.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 77594.

_____

SYLLABUS OF THE COURT

A cause of action based upon an employer intentional tort accrues when the employee discovers, or by the exercise of reasonable diligence should have discovered, the workplace injury and the wrongful conduct of the employer.

_____

FRANCIS E. SWEENEY, SR., J.

{¶1} Appellant David Norgard began working for appellee, Brush Wellman, Inc., in 1981 as a fluoride furnace operator at its beryllium plant in Elmore, Ohio. Within a few weeks of the start of his employment, Norgard broke out in a rash. The rash became so severe that it turned into skin ulcers. Norgard also developed other complications, such as dizziness, heavy breathing, and profuse coughing and spitting. Norgard was consistently treated at the plant dispensary and was repeatedly told not to worry. However, unknown to Norgard, Brush Wellman began to suspect that Norgard was the type of person with a heightened sensitivity to beryllium. Therefore, Brush Wellman began to periodically test his blood and send him to the National Institute of Health in Maryland. Norgard was repeatedly reassured by Brush Wellman that he was fine. Nevertheless, the company filed a workers' compensation claim on his behalf for beryllium sensitivity.

**{¶2}** Norgard was laid off from October 1981 until March 1984, although he still received his pay and benefits. When he was called back, he was placed in various work settings, but he was still exposed to beryllium and he was still having severe reactions to it. In June 1992, Norgard was sent to the Cleveland Clinic for testing. In August 1992, he received the formal diagnosis that he had chronic beryllium disease ("CBD"), a debilitating, and sometimes fatal, lung disease, caused by his exposure to beryllium. His earlier-filed workers' compensation claim was amended to reflect this diagnosis, and he was immediately placed on disability leave.

**{¶3}** Thereafter, at the recommendation of a company physician, Norgard began meeting with a counselor to cope with his illness. He joined a CBD support group, sponsored by the company, and in 1993, he and his wife, Theresa, became facilitators for the group. Between 1993 and October 1995, in an attempt to learn about CBD, Norgard and members of the group contacted the EPA, OSHA, legislators, and doctors familiar with the disease. Instead of assistance, Brush Wellman tried to discourage Norgard and told him his activities were causing alarm among the company's shareholders.

**{¶4}** In October 1995, Norgard read an article in a local newspaper about some beryllium lawsuits involving Brush Wellman and its employees in Arizona. Norgard contacted the law firm mentioned in the article. The attorney, who represented the Brush Wellman employees, told Norgard that for years Brush Wellman had withheld information about the causes of beryllium-related diseases and the acceptable levels of beryllium to which an employee could be exposed without harm, that Brush Wellman knew that its air-sampling collections were faulty and inaccurate and that a large number of its employees were developing CBD, and that there might have been problems related to respiratory equipment and ventilation that led to unnecessarily elevated beryllium exposures. Within two years of receiving this information, Norgard filed an intentional-tort action against

Brush Wellman. His wife joined with a claim for loss of consortium. The Norgards later dismissed their first lawsuit and filed this action within one year of the dismissal.

{¶5} After Brush Wellman's motion to dismiss was denied, it filed a summary judgment motion based on the statute of limitations. The trial court granted summary judgment without an opinion. The court of appeals affirmed. The cause is now before the court upon the allowance of a discretionary appeal.

{¶6} The question before us is whether the employer intentional-tort claim is barred by the statute of limitations. Both parties agree that the applicable statute of limitations for this claim is R.C. 2305.10, which provides for a two-year period in which to bring suit. The parties also agree that the discovery rule applies. However, the parties differ as to what triggered the statute of limitations.

{¶7} Brush Wellman argues and the court of appeals found that the statute of limitations began to run in August 1992 when Norgard learned he had contracted CBD at the workplace. This argument equates Norgard's knowledge that conditions at the plant had caused his illness with knowledge that his illness was caused by Brush Wellman's conduct. Norgard, however, contends that the statute of limitations was triggered in October 1995, when he claims that he discovered Brush Wellman's wrongful conduct. For the following reasons, we agree with Norgard's position. Accordingly, we reverse the court of appeals and remand the cause for a trial.

{¶8} Generally, a cause of action accrues and the statute of limitations begins to run at the time the wrongful act was committed. *Collins v. Sotka* (1998), 81 Ohio St.3d 506, 507, 692 N.E.2d 581. However, the discovery rule is an exception to this general rule and provides that a cause of action does not arise until the plaintiff discovers, or by the exercise of reasonable diligence should have discovered, that he or she was injured by the wrongful conduct of the defendant.

Id., citing *O'Stricker v. Jim Walter Corp.* (1983), 4 Ohio St.3d 84, 4 OBR 335, 447 N.E.2d 727.

{¶9} In *O'Stricker,* the court emphasized that the discovery rule entails a two-pronged test—*i.e.,* discovery not just that one has been injured but also that the injury was "caused by the conduct of the defendant"—and that a statute of limitations does not begin to run until both prongs have been satisfied. *O'Stricker*, 4 Ohio St.3d at 86, 4 OBR 335, 447 N.E.2d 727, paragraph two of the syllabus.

{¶10} Since the rule's adoption, the court has reiterated that discovery of an injury alone is insufficient to start the statute of limitations running if at that time there is no indication of wrongful conduct of the defendant. Moreover, the court has been careful to note that the discovery rule must be specially tailored to the particular context to which it is to be applied. *Browning v. Burt* (1993), 66 Ohio St.3d 544, 559, 613 N.E.2d 993.

{¶11} In *Browning,* the court considered claims against Dr. James C. Burt, who had performed experimental surgeries on his patients, severely maiming them. Jimmie Browning brought a malpractice claim against Dr. Burt and a claim against the hospital for negligent credentialing.

{¶12} Initially, we found that negligent credentialing and medical malpractice are separate claims. Thus, while discovery of the injury and its immediate cause may have been sufficient to trigger the statute of limitations on the malpractice claim, they were not sufficient to trigger the statute of limitations on the negligent-credentialing claim. The distinction turned on the fact that discovery of malpractice and its attendant injury was not sufficient to raise suspicion of the hospital's credentialing practices. We found:

{¶13} "[D]iscovery of a physician's medical malpractice does not, in itself, constitute an 'alerting event' nor does discovery implicate the hospital's credentialing practices or require investigation of the hospital in this regard. To hold otherwise would encourage baseless claims of negligent credentialing and a

hospital would be named in nearly every lawsuit involving the malpractice of a physician." Id.*,* 66 Ohio St.3d at 561, 613 N.E.2d 993.

{¶14} Thus, that Browning was injured by Dr. Burt was not enough for Browning to suspect that the hospital's conduct was wrongful. It was the second event, in the *Browning* case a television program detailing the number of women injured by Dr. Burt, which was held to be the "alerting event," which placed Browning on notice of the need to investigate an action for negligent credentialing.

{¶15} Another case where we drew a distinction between discovery of an injury and discovery of wrongful conduct was *Ault v. Jasko* (1994), 70 Ohio St.3d 114, 637 N.E.2d 870, where we applied the discovery rule to a sexual abuse case involving repressed childhood memories. In that case, the defendant's intentional conduct caused the injury, but this fact was not immediately known to the plaintiff. Therefore, we held that the plaintiff must discover the sexual abuse in order for the statute of limitations to begin running on the claim for assault and battery. Id. at syllabus.

{¶16} *Collins,* supra, 81 Ohio St.3d 506, 692 N.E.2d 581, provides another example. *Collins* involved a wrongful-death claim stemming from a murder. The victim's body was found almost five months after her official death date of July 31, 1992. An autopsy revealed the cause of death to be multiple stab wounds. In January 1993, Mark Sotka was indicted for the murder. He pleaded guilty on February 5, 1993, and was sentenced accordingly. On February 6, 1995, the administrator of the estate, Luckye Collins, filed a wrongful-death against Sotka. The trial court dismissed the action as time-barred because the action was filed more than two years from the date of death. The court of appeals affirmed. We reversed, holding that the date of death is not the appropriate measure for starting the statute of limitations. "A wrongful death claim is not triggered merely by the death of a person, but by 'the death of a person * * * *caused by a wrongful act*.'" (Emphasis added.) R.C. 2125.01(A)(1). Therefore, in order for a wrongful death

case to be brought, the death must be wrongful." (Citation omitted.) Id. at 509, 692 N.E.2d 581. Again, in *Collins,* we drew a distinction between the injury and the conduct that caused the injury. "The fact that a body was discovered and/or that a death took place is irrelevant unless there is proof that a defendant was at fault and caused the death." Id.

{¶17} The reasoning of these cases applies with equal force here. These cases all stand for the proposition that the statute of limitations begins to run once the plaintiff acquires additional information of the defendant's wrongful conduct. For instance, consider the facts of *Browning*. Just as a negligent-credentialing claim is dependent on facts necessary to form a medical-malpractice action, so too is an employer intentional-tort claim dependent on facts necessary to form a workers' compensation action. According to *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, paragraph one of the syllabus, a plaintiff must prove three elements to support a claim for employer intentional tort. One of these elements is proof that the employer knew, with substantial certainty, that the employer's conduct would harm the worker. Thus, claims for both negligent credentialing and an employer intentional tort accrue only when the plaintiff acquires knowledge about the defendant above and beyond the injury itself.

{¶18} Accordingly, we hold that a cause of action based upon an employer intentional tort accrues when the employee discovers, or by the exercise of reasonable diligence should have discovered, the workplace injury and the wrongful conduct of the employer.

{¶19} This holding is consistent with the rationale underlying a statute of limitations and the discovery rule. Its underlying purpose is fairness to both sides. Once a plaintiff knows of an injury and the cause of the injury, the law gives the plaintiff a reasonable time to file suit. Yet if a plaintiff is unaware that his or her rights have been infringed, how can it be said that he or she slept on those rights? To deny an employee the right to file an action before he or she discovers that the

injury was caused by the employer's wrongful conduct is to deny the employee the right to bring any claim at all. By applying the discovery rule as we do, we take away the advantage of employers who conceal harmful information until it is too late for their employees to use it.

{¶20} After construing the evidence and all reasonable inferences therefrom in a light most favorable to Norgard, we find that October 1995 was the trigger date for the statute of limitations. Although Norgard knew that he was sick before this date, it was not until October 1995 that Norgard began to learn the facts necessary to prove the employer intentional-tort claim. These facts included that Brush Wellman knew, but had withheld information demonstrating, that its employees could develop and were developing CBD as a result of exposures that the company was characterizing as safe, that Brush Wellman's safety measures were inadequate to prevent illnesses among its employees, and that the company's monitoring procedures were flawed and produced inaccurate, unreliable results. Until Norgard received this information, he had no reason to know or the means to discover that his disease was caused by the intentional conduct of his employer, as defined in *Fyffe,* supra. Since Norgard filed an action within two years of learning this information, we conclude that Norgard's claim was timely filed and that Brush Wellman was not entitled to summary judgment based on the statute of limitations. The judgment of the court of appeals is reversed, and the cause is remanded for further proceedings.

Judgment reversed

and cause remanded.

DOUGLAS, RESNICK and PFEIER, JJ., concur.

MOYER, C.J., COOK and LUNDBERG STRATTON, JJ., dissent.

————————————

**COOK, J., dissenting.**

**{¶21}** David Norgard knew in August 1992 that he suffered from chronic beryllium disease, likely caused by his exposure to beryllium during his years as a Brush Wellman employee. Norgard was therefore aware of both his injury and its probable cause at that time. Accrual of a cause of action for purposes of the statute of limitations requires nothing more. See *O'Stricker v. Jim Walter Corp.* (1983), 4 Ohio St.3d 84, 4 OBR 335, 447 N.E.2d 727, paragraph two of the syllabus. Because the cause of action accrued in August 1992, at the very latest, the lower courts correctly determined that Norgard's action was time-barred.

**{¶22}** In concluding otherwise, the majority creates a new rule for employer intentional-tort cases. After today's decision, the statute of limitations will not begin to run until some unspecified time when the plaintiff determines that each element of an employer intentional-tort claim is present—notwithstanding that the plaintiff may already *know* that he or she has suffered an injury caused by the conduct of his or her employer. But a rule that rests the date of accrual on a plaintiff's recognition of his or her legal rights is fundamentally flawed. As the United States Supreme Court has observed in an analogous context:

**{¶23}** "[I]n applying a discovery accrual rule, we have been at pains to explain that discovery of the injury, *not discovery of the other elements of a claim*, is what starts the clock. In the circumstance of medical malpractice, where the cry for a discovery rule is loudest, we have been emphatic that the justification for a discovery rule does not extend beyond the injury:

**{¶24}** " 'We are unconvinced that for statute of limitations purposes a plaintiff's ignorance of his *legal rights* and his ignorance of the *fact of his injury or its cause* should receive identical treatment. That he has been injured in fact may be unknown or unknowable until the injury manifests itself; and the facts about causation may be in the control of the putative defendant, unavailable to the plaintiff or at least very difficult to obtain. The prospect is not so bleak for a plaintiff in possession of the critical facts that he has been hurt and who has inflicted

the injury. He is no longer at the mercy of the latter. There are others who can tell him if he has been wronged, and he need only ask.' " (Emphasis added.) *Rotella v. Wood* (2000), 528 U.S. 549, 555-556, 120 S.Ct. 1075, 145 L.Ed.2d 1047, quoting *United States v. Kubrick* (1979), 444 U.S. 111, 122, 100 S.Ct. 352, 62 L.Ed.2d 259.

**{¶25}** By tying the accrual of the cause of action to the elements of a legal claim—rather than to the traditional concepts of injury and its cause—today's majority extends the discovery rule beyond the scope of its justification. I respectfully dissent.

MOYER, C.J., and LUNDBERG STRATTON, J., concur in the foregoing dissenting opinion.

—————————

Waite, Schneider, Bayless & Chesley Co., L.P.A., Stanley M. Chesley, Louise M. Roselle and Paul M. De Marco; Mohler Law Office and George Gerken, for appellants.

Jones, Day, Reavis & Pogue, Patrick F. McCartan, Jeffery D. Ubersax, Jeffrey S. Sutton and Chad A. Readler, for appellee.

Manley, Burke & Lipton, Todd B. Naylor and Daniel R. Beerck, urging reversal for amicus curiae, Ohio Academy of Trial Lawyers.

—————————