JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, Brenda Taylor ("Taylor"), appeals from the decision of the trial court, which granted summary judgment to appellee, Orlando Baking Company, Inc. ("Orlando").
 {¶ 2} On January 21, 2002, Taylor and a co-employee, Tanya Grant ("Grant"), were working by themselves when they started to have an argument. According to Taylor, the argument began when Grant hollered at her, called her a name, and pointed a finger in Taylor's face. Taylor claims she was going to report Grant's behavior to her supervisor when Grant punched her in the face. Taylor struck back, although she asserts such strike was in self-defense, and ripped Grant's shirt, exposing her bare chest during the fight. No one witnessed the argument or subsequent altercation. Because of the altercation, Orlando terminated both Taylor and Grant on January 22, 2002. On January 23, 2002, Taylor filed a police report but took no further action against Grant.
 {¶ 3} Both Taylor and Grant filed grievances with the union[1] and on January 28, 2002, separate reinstatement hearings were held. According to Dale Palumbo, director of human resources for Orlando who attended both reinstatement hearings, Taylor testified that she and Grant were not fighting and she didnot believe that Grant intentionally attacked her. Based on Taylor's testimony, Orlando concluded that Taylor was lying about the altercation with Grant and informed the union that both Taylor and Grant would not be reinstated. Taylor did not pursue her grievance further after the union discovered that she had reported Grant to the police.
 {¶ 4} Taylor, however, filed her amended complaint against Orlando alleging premises liability, race discrimination, negligent retention, respondeat superior, battery, and punitive damages. Taylor voluntarily dismissed her claims for race discrimination, negligent retention, and premises liability. Thereafter, the only substantive claim remaining was one for battery, which when coupled with the respondeat superior theory, as contended by Taylor in her brief in opposition to Orlando's motion for summary judgment, was really a claim for employer intentional tort. The trial court, in granting summary judgment to Orlando, found as follows as to Taylor's claim for employer intentional tort:
 {¶ 5} "Accepting [Taylor's] complaint as one for employer intentional tort, there is insufficient evidence to allow reasonable minds to reach a conclusion other than one adverse to the plaintiff on such a claim."
 {¶ 6} Taylor appeals and asserts in her sole assignment of error that the trial court erred in granting summary judgment. In particular, Taylor contends that Orlando had knowledge of potential violence from Grant, its employee, and that as a result, serious injury was substantially certain to occur. However, Taylor's contention lacks merit.
 {¶ 7} First, Civ.R. 56 provides that summary judgment may be granted only after the trial court determines: 1) no genuine issues as to any material fact remain to be litigated; 2) the moving party is entitled to judgment as a matter of law; and 3) it appears from the evidence that reasonable minds can come but to one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Temple v. WeanUnited, Inc. (1977), 50 Ohio St.2d 317, 327, 364 N.E.2d 267. It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. Celotex Corp. v. Catrett (1987), 477 U.S. 317, 330,91 L.Ed.2d 265, 106 S.Ct. 2548. The non-moving party must then produce probative evidence on all essential elements of his case for which he has the burden of production at trial. Id. This court's review of the lower court's granting of summary judgment is de novo. Ekstrom v. Cuyahoga County Community College,150 Ohio App.3d 169, 2002-Ohio-6228.
 {¶ 8} Second, to establish a claim for employer intentional tort, Taylor must show:
 {¶ 9} "1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality, or condition within its operation;
 {¶ 10} "2) knowledge by the employer that if the employee is subjected by his employment to such a dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and
 {¶ 11} "3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." Fyffe v. Jeno's, Inc. (1991),59 Ohio St.3d 115, 118, 570 N.E.2d 1108; see, also, Norgard v. BrushWellman, Inc., 95 Ohio St.3d 165, 2002-Ohio-2007, ¶ 17.
 {¶ 12} Negligence or even recklessness is insufficient to prove an employer intentional tort. As held in Fyffe:
 {¶ 13} "[P]roof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent." 59 Ohio St.3d at 118.
 {¶ 14} Here, Taylor contends that Orlando knew Grant had a potential for violence based on Grant's prior behavior. For instance, prior to the instant fight, Taylor asserts, through the affidavit of Chris Baker, a former co-employee, that Grant was reported previously for yelling and swearing at her supervisor, was disciplined for being argumentative, and threatened another employee, Nadine Burgos ("Burgos"), by stating that she was going to "shoot her in the head with a nine millimeter."
 {¶ 15} However, none of Grant's prior behavior included physical altercations of any kind or proves that Grant was a "dangerous condition." As admitted by Taylor, prior to the fight on January 21, 2002, Taylor never saw Grant physically strike anyone, never saw Grant involved in anything more than a verbal altercation, and never expected Grant to be violent. Even the alleged threat to Burgos was nothing more than a verbal altercation, which, when investigated by Orlando, Burgos first denied and later admitted. Burgos stated that she did not take the threat seriously because she knew that Grant did not mean it and that she and Grant are friends. Outside of the incident involving Burgos, Taylor admitted that she is unaware of any complaint made against Grant regarding threats or physical altercations.
 {¶ 16} None of Grant's prior behavior is sufficient to prove that Orlando knew of such "dangerous condition" and that harm to Taylor was "substantially certain" to occur. Orlando immediately investigated Grant's verbal threat to Burgos and immediately investigated the instant fight, which is Grant's only physical altercation in her employment history with Orlando. Based on those investigations, respectively, Orlando interviewed Burgos, who initially denied the verbal threat, and immediately terminated both Grant and Taylor for disorderly conduct and fighting for the physical altercation. Taylor provides no evidence that Orlando's knowledge of Grant's prior verbal altercations is tantamount to Orlando being "substantially certain" that harm would result to Taylor. As testified by Taylor, she was never afraid of Grant and she never thought of Grant as a threat. Taylor also testified that she and Grant worked closely together since 1997, she had no significant problems with Grant prior to January 21, 2002, and she never asked Orlando to transfer out of Grant's department.
 {¶ 17} On strikingly similar facts, the court in Bosse v. RareHospitality, Hamilton App. No. C-010760, 2002-Ohio-3804, ¶ 6, affirmed the lower court's grant of summary judgment to the employer and held as follows:
 {¶ 18} "Here, while there was some evidence that Crim was `high strung' and `stressed,' there was nothing to suggest that he would commit the assault on Bosse. Crim had no prior criminal record of violent behavior. He had no prior violent behavior at Longhorn, though he had engaged in some `verbal altercations' with other employees. There was simply not a scintilla of evidence that Longhorn should have known that Crim would be violent, and that harm to Bosse (or anyone else) was substantially certain to occur. If every employee were fired for getting into a verbal altercation, the workplace would be sparsely populated."
 {¶ 19} Likewise, in Jasinski v. Ford Motor Co., Inc., (Jan. 30, 1992), Cuyahoga App. No. 59760, this court affirmed the lower court's grant of summary judgment to the employer on an intentional tort claim based on the alleged attack of a co-worker. The plaintiff, after injury or being injured by a co-worker, brought suit against Ford Motor Company, Inc. ("Ford"), alleging that Ford should have known of the co-worker's propensity for violence because it had previously discharged him for criminal violence on Ford's premises. In support of his allegations, plaintiff submitted evidence of his co-worker's disciplinary history, which included a three-day suspension for verbally threatening a supervisor. Despite this evidence, this court held as follows:
 {¶ 20} "Viewing the evidence in a light most favorable to the appellants, we find that there exists no genuine issue of fact indicating that Ford either intended to injure Mr. Jasinski or it knew that harm to him was substantially certain to occur as a result of the employment of Mr. Wright. Furthermore, Wrights' [sic] disciplinary action reports fail to establish a sufficient propensity for violence to place Ford on notice of possible harm to fellow employees. Accordingly, the appellants failed to show that there was a genuine issue of whether Ford had committed an intentional tort." Id.
 {¶ 21} Despite Grant's prior verbal altercations, based onBosse and Jasinski, Taylor has failed to show that a genuine issue of material fact exists indicating that Orlando knew that harm to her was substantially certain to occur. Taylor has also failed to show that Grant's prior verbal altercations establish a "sufficient propensity for violence to place [Orlando] on notice of harm to fellow employees." Because Taylor has failed to demonstrate that a genuine issue of material fact remains as to her claim for employer intentional tort, the trial court did not err in granting summary judgment to Orlando.[2]
Judgment affirmed.
Timothy E. McMonagle, J., and Anthony O. Calabrese, Jr., J., Concur.
[1] Taylor and Grant were both members of the Bakery, Confectionary Tobacco Workers International Union, Local No. 19, and their employment was governed by the collective bargaining agreement entered into between Orlando and the union.
[2] In its appellate brief, Orlando responds to Taylor's contention that Grant should have been terminated for insubordination based on her prior verbal altercations. Without cross-appealing, Orlando contends that whether Grant was "insubordinate" involves interpretation of the collective bargaining agreement and is a question to be answered through the union's grievance process. Because this issue is not before us on appeal, we do not address the merits of this contention.