OPINION *Page 2 
{¶ 1} Plaintiff-Appellant, Cora Erwin, acting as Administratrix of the estate of Russell Erwin, appeals from the Tuscarawas County Court of Common Pleas granting of Defendants-Appellees, William Swoger, M.D. ("Swoger") and Union Internal Medicine Specialties, Inc.'s ("UIMS") motion for summary judgment. Defendants in the underlying lawsuit are Joseph E. Bryan, M.D. ("Bryan"), Union Hospital Association ("Union Hospital"), William V. Swoger, M.D., and Union Internal Medicine Specialties, Inc. For the purposes of this appeal, however, Defendants Bryan and Union Hospital are not involved.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On July 10, 2006, Appellant filed a complaint in the Tuscarawas County Court of Common Pleas on behalf of her deceased husband, Russell Erwin ("Decedent"). The complaint is captioned "Cora Erwin, Individually and as Adminstratrix of Russell Erwin, Deceased v. Joseph E. Bryan, M.D., Professional Corporation of Joseph Bryan, M.D., The Union Hospital Association, John Doe, M.D. No. 1 Through 5 (whose real names and addresses are unknown at the time of filing this Complaint despite Plaintiffs' best and reasonable efforts to ascertain same), and John Doe, M.D.'s Professional Corporation No. 1 Through 5 (whose real names and addresses are unknown at the time of filing this Complaint despite Plaintiffs' best and reasonable efforts to ascertain same).
 {¶ 3} In her complaint, Appellant brought forth a wrongful death action as the personal representative of the Decedent, who died on July 15, 2004. The complaint *Page 3 
specifically named Defendant Bryan as a treating physician of the Decedent. The complaint further named five John Doe, M.D. defendants.
 {¶ 4} According to the complaint, the Decedent was taken to the Union Hospital emergency room at approximately 1:30 a.m. on June 29, 2004. The Decedent was unresponsive and unable to give a medical history. Earlier that day, the Decedent complained of not feeling well and of generalized fatigue and weakness. After he was stabilized, the Decedent was admitted to the hospital under the care of Defendant Bryan. At approximately 8:00 a.m. on the date of admittance, the Decedent manifested signs of progressive hypoxia requiring respiratory support. Resultantly, he was medicated to induce paralysis and was intubated at approximately 1:00 p.m. that day.
 {¶ 5} The Decedent remained on the ventilator for approximately 96 hours and was extubated on July 3, 2004. On July 5, 2004, the Decedent had an episode of atrial arrhythmia that was treated with medication. The Decedent was discharged from the hospital and sent home on July 7, 2004.
 {¶ 6} During the morning hours of July 15, 2004, the Decedent complained of nausea and lethargy to Appellant. He then collapsed and an emergency medical squad was called to the scene to attempt resuscitation. These attempts were unsuccessful, including attempts made at Union Hospital. The Decedent was declared dead at Union Hospital on July 15, 2004, at 2:54 p.m.
 {¶ 7} On July 16, 2004, the Decedent underwent an autopsy, the results of which revealed the presence of a massive and fatal thromboembolism with evidence of both recent and organizing peripheral thromboemboli, which was determined to be the immediate cause of death. *Page 4 
 {¶ 8} Appellant asserted that as a direct and proximate result of the negligent acts and/or omissions on the part of one or more of the named Defendants, the Decedent was neither timely diagnosed, nor timely treated for pulmonary embolism, the result of which was a massive pulmonary embolism that resulted in his death at the age of 51 years old. The action was brought pursuant to R.C. 2125.02(A)(1), Ohio's wrongful death statute.
 {¶ 9} The complaint was mailed by certified mail and was served upon Defendants Bryan and Union Hospital on July 13, 2006.
 {¶ 10} On July 24, 2006, Bryan filed his answer to the original complaint. On August 4, 2006, Union Hospital filed their answer to the original complaint. Defendant Bryan filed a motion to dismiss Appellant's complaint on September 7, 2006, which he later withdrew on September 20, 2006.
 {¶ 11} On June 26, 2007, Appellant's attorney filed a request for service of the original complaint on two named John Does: William V. Swoger, M.D., and Union Internal Medicine Specialties, Inc. The complaint was personally served on June 27, 2007, on both Defendants.
 {¶ 12} On June 29, 2007, Appellant filed a motion for leave to amend complaint pursuant to Ohio Civ. R. 15. The trial court granted the motion on July 9, 2007. The amended complaint was filed on July 13, 2007, and by the certificate of service, it was served on the named defendants by regular U.S. mail. On July 23, 2007, Defendants Swoger and UIMS filed their answer to Appellant's original complaint and Defendant Bryan filed his Answer to Appellant's amended complaint. *Page 5 
 {¶ 13} On July 27, 2007, Appellees Swoger and UIMS filed their answer to Appellant's amended complaint. On July 30, 2007, Defendant Union Hospital filed their answer to Appellant's amended complaint.
 {¶ 14} On February 28, 2008, Appellees Swoger and UIMS filed a motion for leave to file a motion for summary judgment. The court granted the motion for leave on March 13, 2008. The motion for summary judgment was filed on March 13, 2008. Appellant filed a brief in opposition to Defendants Swoger and UIMS's motion for summary judgment on March 27, 2008. Appellees Swoger and UIMS filed a reply brief on March 31, 2008.
 {¶ 15} By non-oral hearing, on April 4, 2008, the trial court granted Appellees' motion for summary judgment and dismissed the complaint and amended complaint against Defendants Swoger and UIMS with prejudice. It is from that judgment that Appellant now appeals.
 {¶ 16} Appellant raises one Assignment of Error:
 {¶ 17} "I. THE TRIAL JUDGE ERRED, AS A MATTER OF LAW, IN GRANTING SUMMARY JUDGMENT UPON THE STATUTE OF LIMITATIONS DEFENSE."
 I. {¶ 18} In her sole assignment of error, Appellant argues that the trial court erred in granting Appellee's motion for summary judgment. Appellant makes several arguments supporting her claim. First, Appellant argues that the Plaintiff, while aware generally of the name of Defendant Swoger, was not aware of his potential culpability as a defendant until during the discovery process after the original complaint was filed. *Page 6 
 {¶ 19} Next, Appellant argues that she complied with the requirements of Civ. R. 15(D), having personally served Defendants Swoger and UIMS with a summons and a copy of the original complaint, which specified that Defendants' names were unknown at the time of the filing of the original complaint.
 {¶ 20} Appellees, on the other hand, argue that Civ. R. 15(D) is inapplicable because Appellant was aware of Defendant Swoger's identity prior to the filing of her original complaint. They further argue that Appellant had a duty to discover Defendant Swoger's role in the Decedent's care prior to the expiration of the statute of limitations.
 {¶ 21} Additionally, Appellees argue that Appellant's amended pleading cannot relate back to the original complaint, as Appellant failed to comply with Civ. R. 15(D) because she did not personally serve the amended complaint and summons with the words "name unknown" in the summons.
 {¶ 22} Our standard of review on a summary judgment claim is de novo, "and as an appellate court, we must stand in the shoes of the trial court and review summary judgment on the same standard and evidence as the trial court." Osnaburg Twp. Zoning Inspector v. EslichEnvironmental, Inc., 5th Dist. No. 2008CA00026,2008-Ohio-6671 citing Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 506 N.E.2d 212.
 {¶ 23} Civil Rule 56(C) states in part:
 {¶ 24} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the *Page 7 
action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."
 {¶ 25} Summary judgment is a procedural device to terminate litigation so it must be awarded cautiously with any doubts resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356,604 N.E.2d 138.
 {¶ 26} Turning to Appellant's first argument, generally a cause of action accrues at the time that a wrongful act is committed and the statute of limitations begins to run at that time. Collins v. Sotka
(1998), 81 Ohio St.3d 505, 507, 692 N.E.2d 581. However, "the discovery rule is an exception to this general rule and provides that a cause of action does not arise until the plaintiff discovers, or should have discovered, that he or she was injured by the wrongful conduct of thedefendant." Norgard v. Brush Wellman, Inc. (2002), 95 Ohio St.3d 165,766 N.E.2d 977, 2002-Ohio-2007, at ¶ 8 (emphasis added), citingCollins, supra, citing O'Stricker v. Jim Walter Corp. (1983),4 Ohio St.3d 84, 447 N.E.2d 727.
 {¶ 27} The discovery of an injury is insufficient to begin the running of the statute of limitations if there is no indication of wrongful conduct of the defendant. See Norgard, supra, at ¶ 10, citingBrowning v. Burt (1993), 66 Ohio St.3d 544, 559, 613 N.E.2d 993. InBrowning, the defendant, Dr. Burt, had been accused of performing experimental surgeries on his patients, severely maiming them. Browning sued Burt for malpractice and the hospital for negligent credentialing. The court found that the discovery of the injury and malpractice on the part of Dr. Burt was insufficient to trigger the statute of limitations on the negligent credentialing claim because the discovery of *Page 8 
the malpractice was not sufficient to raise suspicion of negligent credentialing practices on the part of the hospital. Specifically, the court stated:
 {¶ 28} "[D]iscovery of a physician's medical malpractice does not, in itself, constitute an `alerting event' nor does discovery implicate the hospital's credentialing practices or require the investigation of the hospital in this regard. To hold otherwise would encourage baseless claims of negligent credentialing and a hospital would be named in nearly every lawsuit involving the malpractice of a physician."Browning, supra, at 561. The court reasoned that the fact that Browning was injured by Dr. Burt was not enough to suspect that the hospital's conduct was wrongful.
 {¶ 29} In Collins, supra, the Supreme Court also concluded that "the fact that a body was discovered and/or that a death took place is irrelevant unless there is proof that a defendant was at fault and caused the death." Collins, supra, at 509. In other words, "a wrongful death claim is not triggered merely by the death of a person, but by `the death of a person * * * caused by a wrongful act' (Emphasis added.) R.C. 2125.01(A)(1). Therefore in order for a wrongful death case to be brought, the death must be wrongful." Id., at 509, 692 N.E.2d 581.
 {¶ 30} Additionally, in Akers v. Alonzo (1992), 65 Ohio St.3d 422,605 N.E.2d 1, 1992-Ohio-66, the Supreme Court addressed a similar issue. Akers sought treatment from Dr. Alonzo in 1984 after he observed blood in his urine. Alonzo admitted Akers to the hospital and performed multiple biopsies of Akers' bladder. The test results were interpreted as demonstrating chronic inflammation with no evidence of carcinoma of the bladder. Alonzo subsequently performed two additional biopsies on Akers' bladder in 1984, both of which were interpreted as negative for evidence of carcinoma. Akers was *Page 9 
subsequently referred to a second urologist, who examined Akers and requested that the pathology slides from the three prior biopsies be forwarded to him for evaluation by a pathologist, who determined that Akers was suffering from transitional cell carcinoma in situ as well as transitional cell dysplasia. Akers began chemotherapy treatment for bladder cancer, which lasted over two years.
 {¶ 31} Akers filed suit against Alonzo in 1988. It was only after the filing of that lawsuit that he learned of the identity of J.A. de Lamerens, M.D., who allegedly interpreted the pathology slides as being negative for carcinoma at least three different times during 1984. Akers' expert expressed an opinion that de Lamerens had misdiagnosed all three tests and that the resulting delay in treatment contributed to the cancer's progression. The Supreme Court, in reviewing whether an action against de Lamerens was timely filed, determined that there was nothing to indicate that plaintiff knew before March 21, 1989, that the pathology slides had been erroneously diagnosed as being negative for cancer, and therefore that the "cognizable event" that triggered the statute of limitations for suing de Lamerens was when plaintiffs discovered through an expert that they had employed during the initial lawsuit that the pathology slides had been misread by de Lamerens. "Mrs. Akers has stated in two affidavits that neither she nor her husband was aware of Dr. de Lamerens' role in diagnosing the pathology slides or that such slides were even in existence, let alone that they had been misinterpreted by some physician other than Dr. Alonzo." Id., at 426.
 {¶ 32} In distinguishing Flowers v. Walker (1992), 63 Ohio St.3d 546,589 N.E.2d 1284 (which Appellee also cites in the present case), the Supreme Court in Akers, stated, "While Flowers, supra, holds that the occurrence of the cognizable event *Page 10 
imposes a duty of inquiry on the plaintiff, it does not hold that the plaintiff has a duty to ascertain the cognizable event itself, especially in a situation such as here where the patient had no way of knowing either that there had been another physician involved or that the other physician had made an incorrect diagnosis." Akers, supra, at 425-426.[1]
 {¶ 33} We find these cases to be persuasive in the case at bar. All of these cases "stand for the proposition that the statute of limitations begins to run once the plaintiff acquires additional information of the defendant's wrongful conduct. For instance, consider the facts ofBrowning. Just as a negligent-credentialing claim is dependent on facts necessary to form a medical-malpractice action, so too is an employer intentional-tort claim dependent on facts necessary to form a workers' compensation action. According to Fyffe v. Jeno's Inc. (1991),59 Ohio St.3d 115, 570 N.E.2d 1108, paragraph one of the syllabus, a plaintiff must prove three elements to support a claim for employer intentional tort. One of these elements is proof that the employer knew, with substantial certainty, that the employer's conduct would harm the worker. Thus, claims for both negligent credentialing and an employer intentional tort accrue only when the plaintiff acquires knowledge about the defendant above and beyond the injury itself." Norgard, supra, at ¶ 17.
 {¶ 34} Similarly, the fact that Defendant Bryan may have committed malpractice was not enough to suspect that the actions of Defendants Swoger and UIMS were also wrongful. For us to require that a plaintiff must name every potential defendant in a complaint before investigating the potential culpability of each defendant would *Page 11 
encourage unnecessary litigation. Merely because a doctor's name may appear in a report does not mean that culpability should be presumed. Diligence in determining potential liability prior to naming a person as a defendant should not be discouraged, but rather should be encouraged.
 {¶ 35} The underlying purpose of the statute of limitations is fairness to both sides. See Norgard, supra. "Once a plaintiff knows of an injury and the cause of the injury, the law gives the plaintiff a reasonable time to file suit. Yet if a plaintiff is unaware that his or her rights have been infringed, how can it be said that he or she slept on those rights? To deny an employee the right to file an action before he or she discovers that the injury was caused by the employer's wrongful conduct is to deny the employee the right to bring any claim at all. By applying the discovery rule as we do, we take away the advantage of employers who conceal harmful information until it is too late for their employees to use it." Id. at ¶ 19.
 {¶ 36} If a plaintiff is also unaware of the culpability of a particular person until during the discovery process, he should be able to avail himself of the provisions of Civ. R. 15(C) and (D) and join that defendant in his claim. We must apply common sense in determining that a person's name may be "known" to a plaintiff, but be "unknown" as a defendant for purposes of litigation.
 {¶ 37} When we construe the evidence in a light most favorable to Appellant, as we are required to do in a summary judgment posture, we find that Appellant, while knowing the name of Defendant Swoger in the semantical sense, did not know the name of Defendant Swoger as a potentially culpable party until the deposition of *Page 12 
Defendant Bryan was taken. Until Appellant received this information, she had no reason to believe that Swoger's conduct was potentially negligent.
 {¶ 38} In determining whether proper service has been made upon a previously unknown defendant, we now turn to Appellant's second argument. Civil Rules 15(C) and (D) and Civ. R. 3(A) are to be read in conjunction with one another when attempting to determine "if a previously unknown, now known, defendant has been properly served so as to avoid the time bar of an applicable statute of limitations * * *."Amerine v. Haughton Elevator Co. (1989) 42 Ohio St.3d. 57,537 N.E.2d 208, syllabus. Civil Rule 3(A) provides that "[A] civil action is commenced by filing a complaint with the court, if service is obtained within one year from such filing upon a named defendant * * * or upon a defendant identified by a fictitious name whose name is later corrected pursuant to Civ. R. 15(D)." Civil Rule 15(D) sets forth the requirements for properly amending a complaint to add the name of a defendant who was previous sued under a fictitious name, such as "John Doe" when the true identity of the defendant becomes known to a plaintiff. Amerine v.Haughton Elevator Co. (1989), 42 Ohio St.3d at 59, 537 N.E.2d 208. These requirements include: (1) that the plaintiff must amend the complaint upon the discovery of the defendant's true name; (2) that the summons must contain the words "name unknown;" and (3) that the defendant must be personally served. Then, pursuant to Civ. R. 15(C), an amended pleading will relate back to the date of the original pleading when "the claim * * * asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading * * *." *Page 13 
 {¶ 39} It is undisputed that Appellant's original complaint was filed prior to the expiration of the applicable statute of limitations, and that the statute of limitations had expired at the time that Appellant discovered the identity of Defendant Swoger as a named defendant. Thus, in order for her amended complaint to have been timely commenced against Swoger, it must relate back to her original complaint pursuant to Civ. R. 15.
 {¶ 40} The question is: what did Appellant need to personally serve upon Appellee in order to comply with Civ.Rs. 3(A) and 15(C) and (D)? The Tenth District Court of Appeals has addressed this question, and we find their reasoning to be persuasive. In Easter v. Complete GeneralConstruction Co., 06AP-763, 2007-Ohio-1297, the court stated that Civ. R. 15(D) provides that "in a case in which the plaintiff does not know the name of a defendant, and designates that defendant by a fictitious name, the plaintiff `must aver in the complaint the fact that he could not discover the name.' The record reveals that appellant indeed averred in her complaint the fact that she could not discover appellee's name.
 {¶ 41} "In addition, `[t]he summons must contain the words `name unknown' and a copy thereof must be served personally upon the defendant. `The word `thereof' refers to the `summons.' This is in accordance with the rule of grammar that, "`[r]eferential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent * * *.'" (Internal citations, omitted).
 {¶ 42} "R.C. 1.42 provides that `[w]ords and phrases [in a statute] shall be read in context and construed according to the rules of grammar and common usage.' Accordingly, it is the summons that must be personally served upon the defendant. *Page 14 
 {¶ 43} "Moreover, it is the original summons that must be personally served upon the defendant, because it would be illogical to require that a new summons, issued with an amended complaint, contain the words `name unknown' when the defendant's name, by that time, would no longer be unknown to the plaintiff. But the defendant's name would be unknown at the time of the filing of the original complaint and service of the original summons.
 {¶ 44} "* * *
 {¶ 45} "If we interpreted Civ. R. 15(D) to require that a plaintiff amend his or her complaint to correct a fictitious name and serve the newly identified defendant with a copy of the amended complaint, all within the one-year period provided by Civ. R. 3(A), then we would be shortening the one-year period that Civ. R. 3(A) affords plaintiffs in which to obtain service upon a fictitiously-named defendant, and we would further contravene the plain language of Civ. R. 3(A), which allows the plaintiff, after obtaining such service, to correct the name `later' pursuant to Civ. R. 15(D).
 {¶ 46} "Based upon the plain language of Civ. R. 15(C) and (D), and Civ. R. 3(A), read in conjunction with one another, we hold that in order for an amended complaint to relate back to the original complaint vis a vis a defendant originally identified by a fictitious name, the plaintiff is required to personally serve the newly identified John Doe defendant with a copy of the original summons and complaint within one year of the filing of the original complaint * * *." Easter, supra, at ¶¶ 22-27.
 {¶ 47} The Eleventh District Court of Appeals has also determined that Civ. R. 15(D) requires personal service only of the original complaint and summons on a John Doe defendant, not the amended complaint and summons. Burya v. Lake Metroparks *Page 15 Bd. Of Park Commissioners, 11th Dist. No. 2005-L-015,2006-Ohio-5192, ¶ 38. Additionally, the Supreme Court of Ohio has construed Civ. R. 15(D) to require only either the original complaint or an amended complaint substituting the actual names of the defendant to be personally served within the limitations period. Varno v. BallyManufacturing Co., et al. (1985), 19 Ohio St.3d 21, 482, N.E.2d 342, syllabus (overruled on other grounds). See also Loescher v. PlastipakPackaging, Inc. et al. (2003), 152 Ohio App.3d 479, 788 N.E.2d 681,2003-Ohio-1850 (holding that a previously unknown defendant was properly served within one-year period for service on identified defendant, and thus amended personal injury complaint which named the previously unknown defendant related back to original complaint for statute of limitations purposes, even though the summons on the original complaint did not contain the words "name unknown"; the complaint listed one named defendant and five John Doe defendants, names unknown, complaint was attached to summons; only the first defendant needed to be identified in summons).
 {¶ 48} In the present case, the original complaint was filed on July 10, 2006. Defendant Bryan was deposed on February 7, 2007. The original complaint and summons were personally served upon Defendants Swoger and UIMS on June 27, 2007. Defendant Bryan was named on that summons and five John Doe defendants, names unknown, were named in the complaint along with Defendant Bryan. Thus, we find that Appellant complied with the requirements as set forth by Civ. R. 15(C) and (D) and Civ. R. 3(A). *Page 16 
 {¶ 49} Based on the foregoing, we find Appellant's assignment of error to be well taken and reverse the judgment of the Tuscarawas County Court of Common Pleas and remand for further proceedings consistent with this opinion.
Delaney, J. and Gwin, P.J. concur. Wise, J. dissents.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Tuscarawas County Court of Common Pleas is reversed and remanded to the trial court for further proceedings consistent with this opinion. Costs assessed to Appellees.
[1] We find Flowers to be inapposite to the present case as well based on this explanation by the Supreme Court. Additionally, we findLaNeve et al. v. Atlas Recycling, Inc. et al., 172 Ohio St.3d 44,2008-Ohio-3921, to be distinguishable, as in LaNeve, the defendant was never personally served with either the original complaint and summons or the amended complaint and summons, but rather was only served by certified mail. *Page 17