MENDA, parent of Menda, a minor, Appellee,

v.

SPRINGFIELD RADIOLOGISTS, INC. et al., Appellants.

[Cite as *Menda v. Springfield Radiologists, Inc.* (2000), 136 Ohio App.3d 656.]

Court of Appeals of Ohio,
Second District, Clark County.

No. 99 CA 71.

Decided Feb. 25, 2000.

*Michael J. Rourke* and *Kathy A. Dougherty,* for appellee.

*Susan Blasik–Miller,* for appellants.

WOLFF, Judge.

Dr. Sundar V. Nilavar appeals from a judgment of the Clark County Court of Common Pleas, which refused to grant a protective order to prevent the discovery of certain medical records in Michelle and Justin R. Menda's medical malpractice action against him.

The history of the case is as follows.

In 1994, Nilavar was a shareholder in Springfield Radiologists, Inc. ("SRI") who worked at Mercy Hospital under contract. Nilavar was involved with the care and treatment of Justin Menda in November 1994, when Justin was admitted to Mercy Hospital with abdominal pain, fever, and vomiting. Nilavar reviewed a CT scan that had been performed on Justin and reported "nonspecific findings related to bowel gas." Several months later, after a second CT scan had been performed, another doctor diagnosed Justin with pancreatic pseudocyst. Justin and his mother, Michelle, filed this medical malpractice action against Nilavar and SRI in June 1996 based on Nilavar's alleged misdiagnosis of Justin's condition.

In late 1995, the physician shareholders in SRI dissolved the corporation in order to reconfigure their practice. Nilavar was excluded from the new practice that was formed to serve Mercy Hospital. The new practice was led by Dr. Robin Osborne. On May 15, 1996, Nilavar filed a complaint against Osborne and the new group, Diagnostic Imaging Associates (hereinafter collectively referred to as "Osborne"), stemming from the business dispute. In this suit, Nilavar alleged that he had suffered mental and emotional distress due to Osborne's actions. In October 1998, Osborne deposed Nilavar's treating psychiatrist, Dr. Kenneth Glass. Glass's deposition is not part of the record before this court, but it is apparently undisputed that he testified to the following: (1) Glass began

treating Nilavar in October 1995, eleven months after Nilavar's treatment of Justin Menda; (2) Nilavar reported to Glass that he had felt stress and mild depression for "a couple of years" prior to seeing Glass and that the symptoms had intensified in the six to eight months immediately preceding treatment by Glass; and (3) at the time of the deposition, Glass believed that Nilavar probably could not return to practice as a radiologist.

When the Mendas learned of Nilavar's claims in the case against Osborne, they sought to discover information regarding Nilavar's emotional and psychiatric condition at and around the time of Justin's treatment. Nilavar sought a protective order barring such discovery on the basis of physician-patient privilege. The trial court overruled Nilavar's motion for a protective order and ruled that the Mendas were entitled to conduct additional discovery.

Nilavar raises three assignments of error on appeal. Because these assignments are interrelated, we will address them together.

"VI.  The physician–patient privilege bars discovery of evidence regarding Dr. Nilavar's Medical And Psychiatric History.

"VII.  The trial court's entry permitting discovery improperly relied upon clearly distinguishable case law.

"VIII.  The trial court erred in denying Dr. Nilavar's motion for a protective order."

Nilavar claims that the Mendas may not obtain his medical records because his waiver of the physician-patient privilege in his suit against Osborne applied only to that case and because a doctor's medical records are protected by physician-patient privilege to the same extent as any other patient's records. Nilavar also claims that his medical condition had "absolutely no bearing" on the Mendas' case.

R.C. 2317.02(B) establishes the physician-patient privilege. The statute provides:

"The following persons shall not testify in certain respects:

" * * *

"(B)(1) A physician * * * concerning a communication made by a patient in that relation or the physician's * * * advice to a patient, except as otherwise provided * * *.

"The testimonial privilege under this division does not apply, and the physician * * * may testify or may be compelled to testify in any of the following circumstances:

"(a) In any civil action, in accordance with the discovery provisions of the Rules of Civil Procedure in connection with a civil action, * * * under any of the following circumstances:

" * * *

"(iii) If a medical claim, * * *, as defined in section 2305.11 of the Revised Code, * * * [or] any other type of civil action, * * * is filed by the patient * * *.

" * * *

"(3)(a) If the testimonial privilege described in division (B)(1) of this section does not apply as provided in division (B)(1)(a)(iii) of this section, a physician * * * may be compelled to testify or to submit to discovery under the Rules of Civil Procedure only as to a communication made to the physician * * * by the patient in question in that relation, or the physician's * * * advice to the patient in question, that related causally or historically to physical or mental injuries that are relevant to issues in the medical claim, * * * [or] other civil action * * *."

■ Because no physician-patient privilege existed at common law, the exercise of the privilege must be strictly construed against the party seeking to assert it. *Ohio State Med. Bd. v. Miller* (1989), 44 Ohio St.3d 136, 140, 541 N.E.2d 602, 605–606.

■ The purpose of the physician-patient privilege is to allow a patient to communicate freely and candidly with a physician without fear that potentially embarrassing information will be publicly disclosed, thereby enabling more complete treatment. *Id.; AK Steel Corp. v. Mitchell* (Dec. 6, 1999), Warren App. No. CA99–04–039, unreported, 1999 WL 1125105; *Ward v. Johnson's Indus. Caterers, Inc.* (June 25, 1998), Franklin App. No. 97APE11–1531, unreported, 1998 WL 336786; *Humble v. Dobson* (Nov. 1, 1996), Champaign App. No. 95–CA–12, unreported, 1996 WL 629535. The physician-patient privilege, like all privileges, is intended to be used as a shield of privacy. It is, however, illogical "to claim protection from exposure by asserting a privilege for communications to doctors at the very same time when the patient is parading before the public the mental or physical condition as to which he consulted the doctor by bringing an action for damages arising from that same condition." McCormick on Evidence, Practitioner Treatise Series (5 Ed.1999) 413, Section 103. The purpose behind the rule is undermined when the party invoking it does an act incompatible with invocation of the privilege, such as placing his mental or physical health in issue. *Humble, supra.* For this reason, a patient is generally deemed to have waived the physician-patient privilege by filing a civil action in which his mental or physical health is at issue. R.C. 2317.02(B).

■ Although it is well settled that, by filing a civil action which puts his mental or physical health at issue, a plaintiff waives the physician-patient privilege *in that case,* the question presented in this case is somewhat different. Here, the question is whether Nilavar's waiver of the physician-patient privilege in his case against Osborne served to waive that privilege in the Mendas' case against him. Nilavar claims that it did not. He asserts that "[i]t is inconceivable [that] the legislature intended physician-patient privilege to be forever lost simply because it was waived in a collateral and unrelated case" and that "[g]iving a party the unbridled opportunity to manipulate the privilege at any time directly contravenes the statute's intended purpose." We disagree with Nilavar's conclusion that the legislature could not have intended for a waiver of physician-patient privilege in one case to operate, at least in some situations, as a waiver in another case. The plain language of R.C. 2317.02(B) sets forth that the physician-patient privilege does not apply if the patient files a medical claim or "any other type of civil action" which puts the mental or physical condition about which he saw the physician at issue. This is precisely what Nilavar did when he filed suit against Osborne. The language of the statute does not limit the waiver to use of the information only in the patient's case. Moreover, the privacy concern which seems to have been central to the legislature's creation of the privilege is not compelling in a situation such as this one where Nilavar has already revealed his mental health problems by filing a claim for mental and emotional distress.

We disagree with Nilavar's characterization that the waiver at issue here is a sweeping waiver "for time immemorial" that gives a party "the unbridled opportunity to manipulate the privilege." Nilavar expresses concern that allowing discovery of his medical condition under the circumstances presented in this case "open[s] the doors to practically any evidence, regardless of relevance, so long as privilege was arguably waived sometime in the past, in any suit." This is obviously not the case. It is well settled that only relevant evidence is admissible. Evid.R. 402. In our view, this is a significant restriction on the waiver, especially in a situation such as this one where the waiver relates to the defendant's physical or mental condition, not the plaintiff's, and is not the injury for which damages are sought. Thus, the Mendas' inquiry into Nilavar's medical records is not "unbridled"; the inquiry is limited by the scope of the waiver in Nilavar's case against Osborne and the relevance of the medical records to the case at hand, *i.e.,* the Mendas' case against Nilavar. In this case, there appears to have been some temporal overlap between the onset of the conditions for which Glass treated Nilavar—and from which he ultimately claimed to have been disabled from the practice of radiology—and Nilavar's treatment of Justin Menda. Such an overlap would be relevant to the Mendas' claim, and it would be discoverable because Nilavar waived his physician-patient privilege when he filed suit against Osborne as to the mental conditions for which Glass treated him.

Nilavar claims that the information disclosed in his case against Osborne has "absolutely no bearing upon the disposition of this case" and that there was no connection between the mental condition for which he was treated and his treatment of Justin Menda. This determination, however, is not Nilavar's to make. *Horton v. Addy* (Jan. 25, 1993), Montgomery App. No. 13524, unreported, 1993 WL 15631, vacated on other grounds (1994), 69 Ohio St.3d 181, 631 N.E.2d 123. The trial court must determine what information is sufficiently relevant so as to be admissible at trial after the medical records have been disclosed. *Id.* Thus, insofar as Nilavar's objection to the cases relied upon by the trial court is based in large part upon his own conclusion that his "medical condition [was] in no way linked in any manner to plaintiffs' claims or allegations," we find his argument to be unpersuasive.

We are aware that other courts may have concluded that a waiver of the physician-patient privilege in one case does not constitute a waiver in another case. See *Asbrock v. Brown* (Aug. 18, 1997), Warren App. No. CA97–01–002, unreported, 1997 WL 473618. But, see, *Mitchell, supra* (a case decided two years later by the same appellate court). However, because we are convinced that the primary purpose of the physician-patient privilege—privacy—cannot be furthered by allowing a party to invoke the privilege after he has disclosed his physical or mental condition in a separate lawsuit, and because R.C. 2317.02(B)(1)(a)(iii) provides that putting one's physical or mental condition at issue in "any other type of civil action" waives the privilege, we conclude that the trial court did not err in refusing to grant a protective order.

The assignments of error are overruled.

The judgment of the trial court will be affirmed.

*Judgment affirmed.*

FAIN and KERNS, JJ., concur.

JOSEPH D. KERNS, J., retired, of the Second Appellate District, sitting by assignment.