DOE, Appellee,

v.

AMERICAN CANCER SOCIETY, OHIO DIVISION, et al.;
University of Cincinnati, Intervenor–Appellant.

[Cite as *Doe v. Am. Cancer Soc., Ohio Div.* (2001), 143 Ohio App.3d 495.]

Court of Appeals of Ohio,
First District, Hamilton County.

Decided June 1, 2001.

*Sirkin, Pinales, Mezibov & Schwartz LLP* and *Marc D. Mezibov,* for appellee.

*Taft, Stettinius & Hollister LLP, J. Alan Lips, W. Stuart Dornette* and *Mitchell D. McCrate;* and *Betty D. Montgomery,* Attorney General, for intervenor-appellant.

SUNDERMANN, Judge.

The University of Cincinnati ("UC") appeals from the trial court's order denying its motion to intervene in an action alleging a tortious invasion of privacy as a result of an American Cancer Society volunteer's disclosing medical information to the plaintiff's neighbors in September 1997. UC sought intervention for

the sole purpose of gaining access to the deposition and sworn answers to interrogatories of the plaintiff, which had been filed with the court and then sealed following settlement and dismissal of the action. For the reasons that follow, we reverse and remand this case to the trial court with instructions to make specific findings consistent with this decision.

Murphy,[1] the Jane Doe plaintiff in the underlying action, is presently the plaintiff in a separate federal action against UC. The federal action alleges that UC engaged in sex discrimination and retaliatory dismissal in violation of Title VII of the Civil Rights Act of 1964 when it terminated the plaintiff's employment as an assistant athletic coach in 1995. *Murphy v. Univ. of Cincinnati*, S.D.Ohio No. C–1–97–276, unreported. After the filing of motions for summary judgment in that action, Murphy filed an affidavit, dated January 27, 2000, in which she confirmed that she was the Jane Doe plaintiff in the underlying action here.

■ When exercising its discretion to grant or deny a motion to intervene pursuant to Civ.R. 24(B), the trial court should resort to the balancing test adopted by this court in *Adams v. Metallica, Inc.* (2001), 143 Ohio App.3d 482, 758 N.E.2d 286. In addition to the degree of similarity between the two suits to justify a claim of overlapping discovery, some of the factors to be considered include "the nature of the protective order, the parties' reliance on it, the ability to gain access to the information in other ways, the need to avoid repetitive discovery, the nature of the material for which protection is sought, the need for continued secrecy, and the public interest involved." *Metallica, supra*, citing *State v. Philip Morris, Inc.* (Minn.App.2000), 606 N.W.2d 676, 686.

■ As noted by the court in *Pansy v. Borough of Stroudsburg* (C.A.3, 1994), 23 F.3d 772, 789, "[t]o facilitate effective appellate review of a district court decision of whether to grant or modify an order of protection or confidentiality, a district court should articulate on the record findings supporting its judgment." Unfortunately, the trial court here did not make such findings. Because we have only now, in *Metallica* and in this case, articulated the factors that should be considered in response to requests to modify protective or confidentiality orders, we remand this case to the trial court to make the necessary findings.

Therefore, we reverse the trial court's order denying intervention and remand the case for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

---

1. In an effort to maintain her privacy, we refer to Murphy by her surname only.

HILDEBRANDT, J., concurs.

GORMAN, P.J., concurs separately.

GORMAN, Presiding Judge, concurring separately.

Although I agree that this case should be remanded to the trial court, I write separately because the issues raised are significant, particularly in light of our companion decision in *Metallica,* and deserve further analysis.

According to UC, in her deposition in the federal action, taken on February 16, 1998, Murphy denied having been previously deposed. Further, according to UC, Murphy denied ever being seen by a physician, psychologist, therapist, or counselor after September 1995. Upon learning later of Murphy's identity as the Jane Doe plaintiff in state court, UC became convinced that these answers were perjurious. UC then unsuccessfully moved the federal court for an order compelling Murphy to produce her deposition previously taken in discovery by the American Cancer Society. Murphy resisted the release of her deposition on grounds that she could not do so under the terms of the confidentiality order that had been approved by the state court on April 13, 1998. (The protective order was, in reality, an order of confidentiality agreed to by the original parties to the settlement.) The state action was terminated, after settlement, on April 19, 1999.

Undeterred, UC then sought to intervene in the action here, requesting the trial court to modify the confidentiality order and to allow the university to view Murphy's discovery deposition and any sworn testimony such as verified interrogatory responses. As grounds for intervention, UC argued that Murphy's federal action included a claim against the university for damages caused by emotional injuries, and that it had information that a claim for emotional injuries had also been made against the American Cancer Society. UC argued that it should be allowed to inspect Murphy's deposition in the state action for any prior inconsistent testimony that could be used to impeach her credibility in the federal action.

The hearing on UC's motion to intervene was marked by rancorous exchanges between counsel. At the conclusion of the hearing, the trial court overruled UC's motion from the bench. When counsel for UC requested findings, the trial court responded, "I believe that the words 'protective order' and 'seal' mean that; that it's sealed."

The parties do not dispute that subsequently, on February 18, 2000, a jury returned a verdict in favor of UC on all of Murphy's federal claims. But Murphy has appealed the judgment for UC. Because of Murphy's appeal in the federal action, UC argues that its appeal of the trial court's order denying intervention in the action here is not moot, since there remains the possibility that the federal judgment will be reversed and a new trial ordered, in which case the university will again wish to view the sealed materials.

In opposing intervention below, Murphy argued that the motion was not timely, as her state case had been settled and the records sealed for almost a year. The record does not demonstrate, however, any prejudice to the original parties specifically attributable to the passage of time. A nonparty's intervention is unlikely to cause prejudice to the original parties when its purpose relates only to the ancillary issue of confidentiality, not to the underlying merits. *Pansy, supra,* at 779–780. UC learned that Murphy was Jane Doe approximately only a week before the trial of the federal action. When it was unsuccessful in obtaining Murphy's deposition in the district court, the university promptly filed its motion to intervene.

Not only did UC have to establish below that its motion to intervene was timely, but it also had to demonstrate, under Civ.R. 24(B)(2), the existence of a common question of law or fact in the state action. Where intervention is used as the means to challenge a protective order in the underlying action, it has generally been held that the old rules and analyses are " 'not helpful.' " *Metallica, supra,* quoting *Pansy, supra,* at 780, fn. 7. The nexus-of-fact-or-law requirement of Civ.R. 24(B) is satisfied by the mere fact that the protective order in the underlying action is the object of the motion to intervene. *Id.*

Courts have inherent authority to regulate discovery and to grant confidentiality orders. *State ex rel. Grandview Hosp. & Med. Ctr. v. Gorman* (1990), 51 Ohio St.3d 94, 554 N.E.2d 1297. Civ.R. 26(B) provides that the trial court may, for "good cause shown," order a pretrial deposition sealed to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. Such protective orders are an exercise of the trial court's discretion. *Ruwe v. Springfield Twp. Bd. of Trustees* (1987), 29 Ohio St.3d 59, 61, 29 OBR 441, 443, 505 N.E.2d 957, 959.

In *Metallica,* we emphasized that discovery has never historically been open to the public and is not a public component of a trial. See *Seattle Times Co. v. Rhinehart* (1984), 467 U.S. 20, 30, 104 S.Ct. 2199, 2207, 81 L.Ed.2d 17, 25. Further, we noted that the Ohio Supreme Court has determined that criminal discovery exchanged by the prosecutor and the defendant under Crim.R. 16 is not subject to release or inspection under either the First Amendment or as a "public record" under the Ohio Public Records Act, R.C. 149.43. *State ex rel. WHIO–TV–7 v. Lowe* (1997), 77 Ohio St.3d 350, 354, 673 N.E.2d 1360, 1363. We concluded in *Metallica* that the holding of *Lowe* should apply equally to civil discovery in a private lawsuit, even though Civ.R. 5(D) requires certain depositions to be filed with the clerk of the trial court.[2]

---

2. For an extensive discussion of whether the public has a constitutional, a common-law, or a statutory right of access to discovery materials, the reader is directed to *Metallica,* cited in the text, which is scheduled for simultaneous release and should be viewed as a companion case.

The trial court's inherent power to grant a protective order relative to discovery does not mean, however, that such an order can be arbitrarily granted. It has been observed that there is a troubling tendency in the willingness of trial courts routinely to grant confidentiality orders to facilitate settlement without considering the strong public interest in minimizing secrecy in the judicial process. *Id.* at 785–786, fn. 14; *Metallica, supra;* FitzGerald, Note, *Sealed v. Sealed: A Public Court System Going Secretly Private* (1990), 6 J.L. & Pol. 381, 382.

On the limited record we have, Murphy's privacy interests, at least insofar as her recent medical history, appear greatly diminished as a result of the federal action against UC. As UC correctly points out, both the state and the federal actions alleged the infliction of emotional injury for an overlapping period of time. UC persuasively argues that its ability to defend against the claim of emotional injury as a result of Murphy's employment termination has been hampered without information regarding the emotional harm Murphy allegedly suffered from the subsequent disclosure of her medical condition. As stated by UC:

"Murphy apparently claimed emotional distress against other defendants in the State Case for the period of time she claimed to be suffering emotional distress because UC discharged her. Without UC's ability to establish this through her testimony and documents from the State Case, a jury could not adequately determine whether the defendants in the Federal Case or the State Case caused her emotional distress or in what degrees, how the cause of compensatory damages should be allocated between defendants, or whether she was able to work during some of the time that has elapsed since her termination for which she seeks lost pay from UC."

Furthermore, under R.C. 2317.02(B), the filing of the federal action acted as a waiver of Murphy's physician-patient privilege, the purpose of which is to encourage the patient to freely and candidly disclose symptoms and conditions to the physician without fear that potentially embarrassing information will become public. *Ohio State Med. Bd. v. Miller* (1989), 44 Ohio St.3d 136, 140, 541 N.E.2d 602, 605–606; *Menda v. Springfield Radiologists, Inc.* (2000), 136 Ohio App.3d 656, 659, 737 N.E.2d 590, 593. "If the physical [or psychological] condition of the patient is at issue in a case, it would be a burlesque upon logic to allow the patient to claim privilege." Wade, Note, The Ohio Physician Patient Privilege: Modified, Revised, and Defined (1989), 49 Ohio St.L.J. 1147, 1157; *Wargo v. Buck* (1997), 123 Ohio App.3d 110, 120, 703 N.E.2d 811, 818.[3]

---

**3.** In our decision in *Metallica,* in which we upheld the trial court's refusal to modify the protective order sealing the band members' depositions, the band was the defendant in both

Concededly, Murphy's state action concerned an alleged invasion of privacy into a very personal medical matter. Significantly, UC, in its motion to intervene, expressed a willingness to comply with any confidentiality requirements that the trial court might impose as a condition of its being allowed to view her discovery deposition and sworn answers. It strikes me that the trial court should have been able to reach some compromise that would have allowed limited inspection of the materials and at the same time protected Murphy from any unnecessary dissemination of matters that were not relevant to the issue of emotional injury as it was raised in the federal action.

Based on the foregoing, I concur with the decision to remand this matter to the trial court. On remand, the court must make specific findings that address all relevant factors, including specifically those that address Murphy's right to privacy concerning the emotional harm that she has now placed at issue in two separate lawsuits.

cases, and thus there was no argument to be made that the band had waived any of its stated privacy interests.