**Sundar V. NILAVAR, Plaintiff,**

v.

**MERCY HEALTH SYSTEMS–
WESTERN OHIO, et al.,
Defendants.**

**No. 3:99cv612.**

United States District Court,
S.D. Ohio,
Western Division.

May 23, 2006.

---

Kenneth A. Lazarus, Maggi Ann Lazarus, Kenneth A. Lazarus & Assoc, Washington, DC, Lee Charles Falke, Lee C. Falke & Associates, Dayton, OH, for Plaintiff.

Jeffrey R. Teeters, Frost & Jacobs, Cincinnati, OH, for Defendants.

DECISION AND ENTRY SUSTAINING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (DOC. # 196); DECISION AND ENTRY OVERRULING PLAINTIFF'S MOTION FOR RECONSIDERATION (DOC. # 197); JUDGMENT TO BE ENTERED IN FAVOR OF DEFENDANTS AND AGAINST PLAINTIFF; TERMINATION ENTRY

RICE, District Judge.

The Plaintiff, a radiologist, brings this litigation to obtain compensation for the injuries he alleges that he suffered as a result of the decision of Defendant Mercy Health Systems–Western Ohio ("Mercy Health Systems") to enter into an exclusive contract with Dr. Robin E. Osborn ("Osborn") and his medical corporation, Diagnostic Imaging Associates of Ohio, Inc. ("DIA"), to provide radiology services at the two hospitals it operates in Springfield and Urbana, Ohio ("Mercy Hospitals").[1] That exclusive contract resulted in Plaintiff being prevented from practicing

---

1. The other Defendants are Catholic Healthcare Partners ("CHP"), the corporate parent of Mercy Health Systems, and two individuals who have served as officers of Mercy Health Systems.

radiology at those two hospitals, where he had practiced his profession for a number of years. Given that the parties and the Court are intimately familiar with the facts and circumstances giving rise to this litigation, the Court need not recount them further. However, a discussion of the recent procedural history is necessary to the understanding of the motions ruled upon herein.

In its Decision of March 31, 2005 (Doc. # 177), the Court granted Plaintiff leave to amend his Complaint. As a consequence, Plaintiff filed such an amendment, with which he added a Ninth Claim for Relief, a claim of intentional infliction of emotional distress under the common law of Ohio. *See* Doc. # 178. On June 2, 2005, this Court entered a Decision, sustaining the Defendants' request to exclude testimony from Plaintiff's expert witness, John Pisarkiewicz ("Pisarkiewicz"). *See* Doc. # 193. In its Decision of July 5, 2005 (Doc. # 194), this Court sustained the Defendants' Motion for Summary Judgment (Doc. # 117). As a result of those two Decisions, only Plaintiff's newly added Ninth Claim for Relief remained to be resolved in this litigation. Thereafter, the Defendants moved for summary judgment on that claim (*see* Doc. # 196), and the Plaintiff sought reconsideration the Court's Decisions of June 2, 2005, and July 5, 2005.[2] *See* Doc. # 197. On February 2, 2006, this Court heard oral argument from counsel on those motions. The Court now rules upon those two motions in the order in which they were filed. However, given that one motion seeks summary judgment, while the other seeks reconsideration of an order sustaining such a motion, the Court begins its analysis by setting forth the standards which it must apply whenever it rules upon a request for summary judgment.

**2.** The Court had given the parties leave to file such motions during a telephone conference

## I. Standards Applicable to Motions for Summary Judgment

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548. *See also Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.") (quoting *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d

call conducted with counsel on July 6, 2005.

1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed.R.Civ.P. 50). *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). *See also Michigan Protection and Advocacy Service, Inc. v. Babin,* 18 F.3d 337, 341 (6th Cir.1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson,* 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all *reasonable* inferences in the favor of that party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the factfinder. 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure,* § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). *See also L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc.,* 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment...."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

## II. Defendants' Motion for Summary Judgment on Plaintiff's Claim of Intentional Infliction of Emotional Distress (Doc. # 196)

In the Amendment to his Complaint (Doc. # 178), Plaintiff sets forth a claim of

intentional infliction of emotional distress. Plaintiff brings his Ninth Claim for Relief against only Mercy Health Systems and CHP. In particular, he alleges therein that employees of those Defendants, acting in the scope of their employment, harassed and humiliated him by: 1) criticizing and punishing him due to his insistence that non-ionic contrasts be utilized; 2) supporting efforts by physicians who were competing with him to impugn and malign him; 3) conducting secret efforts designed to punish and to exclude him from the practice of his medical speciality within his community; 4) duplicitous behavior; and 5) trifling with his dignity and professionalism. Doc. # 178 at 2. Plaintiff also alleges that this pattern of harassment and humiliation culminated in the termination of his privileges at the hospitals operated by Mercy Health Systems. *Id.* at 2–3

Defendants move for summary judgment on this claim, presenting five independent arguments, to wit: 1) this claim is barred by the applicable statute of limitations; 2) Plaintiff's unique response to the exclusive contract granted to DIA and to losing his privileges at the Mercy Hospitals precludes his satisfying the "reasonable person normally constituted" prong of a claim of intentional infliction of emotional distress; 3) there is no evidence that they intended to cause any harm; 4) their assertion of their legal rights creates a privilege, shielding them from liability for emotional harm; and 5) the evidence fails raise a genuine issue of material fact as to the cause of his injuries. CHP also argues that it is entitled to summary judgment, because there is no evidence to hold it liable. For reasons which follow, the Court concludes that the Plaintiff's Ninth Claim for Relief is barred by the applicable statute of limitations. Therefore, the Court does not address the Defendants' other arguments in support of summary judgment. The Court begins its analysis by reviewing the legal underpinnings of a claim of intentional infliction of emotional distress.

In *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 453 N.E.2d 666 (1983), the Ohio Supreme Court held, in the syllabus:

> One who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm. (*Bartow v. Smith*, 149 Ohio St. 301, 78 N.E.2d 735, overruled.)

Therein, the Ohio Supreme Court elaborated upon what would be deemed to constitute extreme and outrageous conduct:

> With respect to the requirement that the conduct alleged be "extreme and outrageous," we find comment d to Section 46 of the Restatement, *supra*, at 73, to be instructive in describing this standard:

> " * * * It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' "

> "The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our so-

ciety are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam. See Magruder, Mental and Emotional Disturbance in the Law of Torts, [49] Harvard Law Review 1033, 1053 (1936). * * * "

*Id.* at 374–75, 453 N.E.2d at 671–72.

■ The parties agree that Plaintiff's claim of intentional infliction of emotional distress is governed by the statute of limitations contained in § 2305.09 of the Ohio Revised Cope, under which such a claim must be brought within four years of accrual. *See* Defendants' Motion for Summary Judgment (Doc. # 196) at 10–11; Plaintiff's Memorandum in Opposition (Doc. # 201) at 5. *Accord, Yeager,* 6 Ohio St.3d at 375, 453 N.E.2d at 672; *Keisler v. FirstEnergy Corp.,* 2006 WL 259639 (Ohio App.2006). A claim of intentional infliction of emotional distress accrues when the plaintiff suffers severe emotional distress as a result of the defendant's wrongful actions. *Henning v. Tuscarawas County Dept. of Human Services,* 1996 WL 73877

(Ohio App.1996). One Ohio appellate court explained:

[A] cause of action for intentional infliction of emotional distress does not accrue until the tort is complete, that is, at the time the injury is incurred and the emotional impact is felt.

*Biro v. Hartman Funeral Home,* 107 Ohio App.3d 508, 514, 669 N.E.2d 65, 68 (1995). *Accord, Emph v. Sudimack,* 1999 WL 506971 (6th Cir.1999).

Defendant argues that the following uncontroverted facts demonstrate that the evidence fails to raise a genuine issue of material fact as to whether this claim is barred by the relevant, four-year statute of limitations: [3]

1. Plaintiff learned on September 2, 1995, that Osborn and DIA had been selected as the exclusive provider of radiology services at the Mercy Hospitals and that he (Plaintiff) was not included in the DIA proposal. Plaintiff's Complaint (Doc. # 1) at ¶ 46; Plaintiff's Dep. at 322.

2. By September 22, 1995, Plaintiff began to suffer the severe emotional distress, which has since prevented him from returning to work as a radiologist. Plaintiff's Dep. in *Menda* action at 13.[4] Plaintiff's deposition testimony in *Menda* in that regard is fully supported by Kenneth Glass, his treating psychiatrist from October, 1995, until December, 2004. Glass testified during his deposi-

---

**3.** It bears emphasis the Plaintiff did not seek to assert his claim for intentional infliction of emotional distress until he requested leave to amend on May 28, 2003. *See* Doc. # 104. That claim was not actually set forth in this litigation until March 29, 2005, when Plaintiff filed the Amendment to his Complaint. *See* Doc. # 178. Plaintiff argues that the Amendment relates back to the filing of his Complaint, in accordance with Rule 15(c) of the Federal Rules of Civil Procedure. *See* Doc. # 201 at 5–6. Since the Defendants did not

take the opposite position in their motion, the Court accepts that the Amendment relates back and that, therefore, the statute of limitations ceased running on November 19, 1999, when Plaintiff filed his initial Complaint (Doc. # 1).

**4.** *Menda* was a malpractice action against Plaintiff and others in state court. *See Menda v. Springfield Radiologists, Inc.,* 136 Ohio App.3d 656, 737 N.E.2d 590 (2000).

tion that Plaintiff became totally mentally disabled in September, 1995. Glass Dep. in *Menda* at 22, 47. Moreover, the forensic psychiatrist retained by Plaintiff to testify in this litigation opined that Plaintiff became mentally disabled in September–October, 1995. *See* Doc. #102. Before September, 1995, Plaintiff was an emotionally-sound, well balanced individual. Glass Dep. at 151, 155, 163.

3. Plaintiff did not initiate this action until November 19, 1999. *See* Doc. #1. Plaintiff does not challenge any of the foregoing. On the contrary, he agrees that he became aware in early September, 1995, that Mercy Health Systems intended to award an exclusive contract for radiology services to DIA, and that, by September 22, 1995, he was suffering a level of emotional distress and depression which prevented him from practicing his profession.[5] *See* Doc. #201 at 7. Consequently, it would appear that Plaintiff's claim of intentional infliction of emotional distress is barred by the applicable statute of limitations, given that Plaintiff had suffered his injury, the emotional distress, by the end of September, 1995, thus rendering the tort complete. This litigation was not initiated until November 19, 1999, more than four years later. Nevertheless, the Plaintiff presents two arguments in opposition to the proposition that this claim is barred by the statute of limitations. Neither of those arguments convinces this Court that the evidence raises a genuine issue of material fact on that question.

■ *First*, Plaintiff argues that the tort was not complete in September, 1995. In support of this assertion, he points to his own deposition testimony to the effect that his emotional distress and depression worsened in December, 1995, when he was notified that his privileges at the Mercy Hospitals were being terminated, effective January 1, 1996. This evidence does not, however, raise a genuine issue of material fact as to whether Plaintiff's Ninth Claim for Relief is barred by the statute of limitations. The evidence supplied by Plaintiff, including his deposition testimony and that of his treating psychiatrist, as well as the report of the forensic psychiatrist he has retained to testify in this litigation, is that he became mentally disabled in late September, 1995. At that time, the injury had been incurred and the emotional impact had been felt. Therefore, the tort was complete at the latest in October, 1995, more than four years before this litigation was initiated.

*Second*, the Plaintiff argues that he did not obtain certain evidence to support this claim until 2003. Therefore, his argument continues, an application of the discovery rule means that his Ninth Claim for Relief did not accrue until 2003, less than four years before he filed the Amendment to his Complaint. In support of that argument, Plaintiff relies upon *Norgard v. Brush Wellman, Inc.*, 95 Ohio St.3d 165, 766 N.E.2d 977 (2002). Therein, the plaintiff brought an intentional tort action against his former employer, seeking compensation for the losses he and his wife had suffered as a result of his contracting chronic beryllium disease in the workplace.[6] The trial court granted summary judgment to the defendant, concluding that it was barred by the applicable two-year statute of limitations. The court of appeals affirmed, concluding that the statute of limitations began to run when the plaintiff had discovered that he had suffered chronic beryllium disease at the workplace.

---

5. Of course, it could not be denied that this litigation was initiated on November 19, 1999.

6. The former employee's spouse also asserted a claim of loss of consortium.

Upon further appeal, the Ohio Supreme Court reversed, holding in the syllabus:

A cause of action based upon an employer intentional tort accrues when the employee discovers, or by the exercise of reasonable diligence should have discovered, the workplace injury and the wrongful conduct of the employer.

*Id.* The Ohio Supreme Court explained its holding:

Generally, a cause of action accrues and the statute of limitations begins to run at the time the wrongful act was committed. *Collins v. Sotka* (1998), 81 Ohio St.3d 506, 507, 692 N.E.2d 581. However, the discovery rule is an exception to this general rule and provides that a cause of action does not arise until the plaintiff discovers, or by the exercise of reasonable diligence should have discovered, that he or she was injured by the wrongful conduct of the defendant. *Id.*, citing *O'Stricker v. Jim Walter Corp.* (1983), 4 Ohio St.3d 84, 4 OBR 335, 447 N.E.2d 727.

In *O'Stricker*, the court emphasized that the discovery rule entails a two-pronged test—i.e., discovery not just that one has been injured but also that the injury was "caused by the conduct of the defendant"—and that a statute of limitations does not begin to run until both prongs have been satisfied.

*O'Stricker*, 4 Ohio St.3d at 86, 4 OBR 335, 447 N.E.2d 727, paragraph two of the syllabus.

*Id.* at 167, 766 N.E.2d at 979. The *Norgard* court reversed the grant of summary judgment in favor of the defendant, because the plaintiff had learned about the defendant's role in the release of the beryllium within two years of the initiation of the lawsuit.[7]

Herein, the uncontradicted evidence demonstrates that the Plaintiff knew or should have known about the Defendants' alleged wrongful conduct more than four years before November 19, 1999. He knew in early September, 1995, that Mercy Health Systems had decided to award Osborn and DIA the *exclusive* contract for radiology services at the Mercy Hospitals. Given that he was aware that DIA and Osborn would be the exclusive provider of radiology at those hospitals, he knew or should have known in early September, 1995, that his privileges at those hospitals would end, even though he was not formally notified that his privileges would be terminated until December of that year. In other words, he knew or should have known more than four years before this litigation was initiated that Osborn and DAI would be the exclusive providers of radiology providers at the Mercy Hospi-

---

7. In *O'Stricker*, the Ohio Supreme Court held in ¶ 2 of the syllabus:

When an injury does not manifest itself immediately, the cause of action does not arise until the plaintiff knows or, by the exercise of reasonable diligence should have known, that he had been injured by the conduct of defendant, for purposes of the statute of limitations contained in R.C. 2305.10.

*O'Stricker* was a lawsuit by a former plasterer who had developed cancer as a result of his exposure to asbestos. Plaintiff's cancer did not manifest itself until many years after he had been exposed to the asbestos. Nevertheless, the Ohio Supreme Court unanimously reversed the entry of judgment in favor of defendants on statute of limitations grounds, because the action had been initiated within two years of the onset of the injury. Following *O'Stricker*, the Cuyahoga County Court of Appeals held in *Biro, supra*, that the discovery rule was not applicable to claims of the intentional infliction of emotional distress, because that rule "concerns the situation when an injury is incurred, but not discovered until later." 107 Ohio App.3d at 514, 669 N.E.2d at 69 (citing *O'Stricker*). Defendants' argument to the contrary notwithstanding, this Court is obligated to apply *Norgard*, wherein the Ohio Supreme Court broadened the discovery rule.

tals, and that he would not be permitted to provide such services.

Based upon the foregoing, the Court concludes that Plaintiff's Ninth Claim for Relief is barred by the applicable statute of limitations, the four-year statute contained on § 2305.09. Accordingly, it sustains Defendants' Motion for Summary Judgment on Plaintiff's Claim of Intentional Infliction of Emotional Distress (Doc. # 196).[8]

## II. Plaintiff's Motion for Reconsideration (Doc. # 197)

Plaintiff has filed a motion, requesting that the Court reconsider its Decisions of June 2, 2005 (Doc. # 193) and July 5, 2005 (Doc. # 194). In those Decisions the Court agreed with Defendants, respectively, that testimony from Pisarkiewicz should be excluded and that they were entitled to summary judgment on the Plaintiff's claims other than his Ninth Claim for Relief. Although the Plaintiff

has effectively presented his request for reconsideration, this Court after reconsidering those Decisions remains convinced that it ruled correctly therein.[9] Moreover, given the lengthy analysis in those Decisions, no practical benefit would be served by drafting another lengthy opinion that merely repeats previously discussed law and facts. The Court will, however, address one of the Plaintiff's arguments in greater detail.

One of the Court's independent bases for concluding that Defendants were entitled to summary judgment on Plaintiff's antitrust claims was that he could not establish the requisite geographic market, in light of its conclusion that Pisarkiewicz could not testify. See Doc. # 194 at 14–18. Plaintiff complains that, in reaching that conclusion, this Court failed to address the decision of the Supreme Court in FTC v. Indiana Federation of Dentists, 476 U.S. 447, 106 S.Ct. 2009, 90 L.Ed.2d 445 (1986). Although the Court agrees with Plaintiff

---

**8.** As the Ohio Supreme Court indicated in *Yeager*, liability for intentional infliction of emotional distress will be found "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." 6 Ohio St.3d at 375, 453 N.E.2d at 671. Simply stated, none of the Plaintiff's allegations which form the basis of this claim remotely constitute such extreme and outrageous behavior. That said, however, Plaintiff's allegation that Defendants' employees supported efforts of competing physicians to impugn and malign him could conceivably have constituted the forbidden type of extreme and outrageous behavior, *if* he had added flesh to that conclusory allegation. Moreover, herein, this Court concludes with finality that the Defendants did not violate the federal and state antitrust claims by entering into the exclusive contract with DAI and Osborn. Therefore, the Defendants did not violate the rights which Plaintiff has asserted herein, let alone act in an atrocious and intolerable manner, by entering into that exclusive arrangement and by termi-

nating the Plaintiff's privileges at the Mercy Hospitals. The absence of evidence of extreme and outrageous behavior by Defendants or their employees would be an alternative reason for concluding that the Defendants are entitled to summary judgment on this claim, if this Court had not concluded that it is barred by the applicable statute of limitations.

**9.** The Court's Decision of July 6, 2005, sustaining Defendants' request for summary judgment, did not dispose of Plaintiff's Ninth Claim for Relief. Therefore, this Court is free to reconsider that Decision. *See* Fed.R.Civ.P. 54(b) ("In the absence of [an express determination that there is no just reason for delay and upon an express direction for the entry of judgment], any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.").

that it did not address *Indiana Federation of Dentists,* based upon the following reasoning, the Court concludes that the Supreme Court's decision therein does not demonstrate the existence of a genuine issue of material fact on his antitrust claims.

In *Indiana Federation of Dentists,* the Supreme Court upheld an administrative decision by the Federal Trade Commission ("FTC"), holding that a "work rule" adopted by the Indiana Federation of Dentists ("Federation") constituted an unreasonable restraint of trade, in violation of § 1 of the Sherman Act, 15 U.S.C. § 1, and, thus, an unfair method of competition, in violation of § 5 of the FTC Act, 15 U.S.C. § 45. Under the work rule, members of the Federation were directed to withhold x-rays from insurance companies. The insurance companies would use the x-rays to evaluate the claims of dental patients. During the course of its decision, the Supreme Court rejected the Federation's assertion that the failure of the FTC to make findings of fact concerning the geographic market in which the Federation's members competed and their power within those markets rendered erroneous the FTC's conclusion that the work rule constituted an unreasonable restraint of trade. *Id.* at 460, 106 S.Ct. 2009. The Supreme Court explained:

> The Commission found that in two localities in the State of Indiana (the Anderson and Lafayette areas), Federation dentists constituted heavy majorities of the practicing dentists and that as a result of the efforts of the Federation, insurers in those areas were, over a period of years, actually unable to obtain compliance with their requests for submission of × rays. Since the purpose of the inquiries into market definition and market power is to determine whether an arrangement has the potential for genuine adverse effects on competition,

> "proof of actual detrimental effects, such as a reduction of output," can obviate the need for an inquiry into market power, which is but a "surrogate for detrimental effects." 7 P. Areeda, Antitrust Law ¶ 1511, p. 429 (1986). In this case, we conclude that the finding of actual, sustained adverse effects on competition in those areas where IFD dentists predominated, viewed in light of the reality that markets for dental services tend to be relatively localized, is legally sufficient to support a finding that the challenged restraint was unreasonable even in the absence of elaborate market analysis.

*Id.* at 460–61, 106 S.Ct. 2009 (footnote omitted). Plaintiff contends that the evidence raises a genuine issue of material fact as to whether actual detrimental effects flowed from the exclusive contract between Mercy Health Systems and DAI. In support of this proposition, Plaintiff presents three arguments, none of which convinces this Court that the evidence raises a genuine issue of material fact that actual detrimental effects flowed from that exclusive contract.

*First,* Plaintiff points to the issue of using ionic contrast materials as opposed to using non-ionic contrast materials. It is uncontroverted that the Plaintiff has been a longstanding opponent of the use of less-expensive ionic contrast materials. Mercy, seeking to save a substantial amount of money, wanted to substitute ionic for non-ionic contrast materials. Osborn agreed with Mercy to a new policy which permitted, although did not require, the use of ionic contrast materials. Plaintiff contends that this change in policy, which was facilitated by the exclusive contract, evidences actual detrimental effects flowing from that contact, because ionic contrast materials are less safe than non-ionic contrast materials. The flaw in this argument is that there is no evidence of an *actual*

detrimental effect as the result of the use of ionic contrast materials. There is no evidence that any patient at the Mercy Hospitals has suffered as a result of the use of ionic contrast materials. In the absence of such evidence, this Court cannot conclude that the evidence of the use of ionic contrast materials, alone, constitutes an actual adverse detrimental effect on the patients in the Mercy Hospitals flowing from the exclusive contract.

*Second,* Plaintiff points to the fact that Osborn was paid about twice the amount under the exclusive contract as he earned prior to the execution of that agreement. The Plaintiff has failed, however, to explain how the increased income for Osborn has constituted or brought about an actual adverse detrimental effect on consumers of in-patient radiology services.

*Third,* Plaintiff points out that the exclusive contract between DAI and Mercy Health Systems permits the use of *locum tenens* physicians (i.e., temporary or part-time physicians). Once again, in the absence of evidence that the health of patients at the Mercy Hospitals has suffered as a result of the use of such physicians, this Court cannot conclude that their use, alone, raises a genuine issue of material fact as to whether the exclusive contract had an *actual* detrimental effect.

Based upon the foregoing, the Court overrules Plaintiff's Motion for Reconsideration (Doc. # 197).

The Court directs that judgment be entered in favor of Defendants and against Plaintiff.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.