OPINION
{¶ 1} Plaintiff-appellant, Anthony DiNozzi, appeals from a judgment of the Ohio Court of Claims granting the Civ. R. 12(B)(6) motion to dismiss of defendant-appellee, Ohio State Dental Board. Plaintiff assigns a single error:
 THE TRIAL COURT ERRED IN PREMATURELY DISMISSING THE APPELLANT/PLAINTIFF'S COMPLAINT IN THE COURT OF CLAIMS, IN THE PURSUIT OF ECONOMIC RELIEF, FOR NEGLIGENCE UNDER OHIO LAW, WHEN SUBSTANTIAL EVIDENCE EXISTED THAT WOULD PROPERLY PROCEED TO TRIAL UNDER THE LAWS OF OHIO. *Page 2 
Because the Court of Claims properly determined plaintiff's complaint fails to state a claim upon which relief may be granted, we affirm.
I. Procedural History and Facts {¶ 2} According to plaintiff's "Complaint for Willful Negligence (Legal)," plaintiff on November 28, 2001 placed his Ohio dental license on permanent inactive, retired status. As of January 8, 2002, defendant's website indicated plaintiff's dental license still was retired, inactive and voluntarily relinquished.
 {¶ 3} Plaintiff alleges that on or before February 23, 2003, defendant activated and reinstated plaintiff's dental license without plaintiff's consent, permission, or reinstatement application. Defendant then verified its actions with a website update, a phone call to plaintiff's probation officer, and a letter from the board's assistant director, Michael Everhart. According to plaintiff, he was ordered to work under his reinstated license in order to comply with probation guidelines and a court order to pay $900 per month, all arising from prior encounters with the criminal justice system. Plaintiff nevertheless was aware his reinstated license was subject to disciplinary proceedings that ultimately resulted in defendant's revoking plaintiff's dental license on May 26, 2003.
 {¶ 4} As a result of plaintiff's actions during the short period of his reactivated license, he was charged with Medicaid fraud for treating Medicaid patients when he in the past had been convicted of Medicaid violations that rendered him ineligible to provide Medicaid services. He was tried and convicted in Licking County on March 23, 2006 "due to practicing dentistry unlawfully on Medicaid patients whom he was Federally Debarred from the Government." (Complaint, ¶ 23.) *Page 3 
 {¶ 5} With that factual predicate, plaintiff's complaint argues that "Defendant intentionally `activated' and `reinstated' the Plaintiff's license `consciously' and `willfully', NOT accidentally with full intentions to `trick' the Plaintiff into practicing dentistry in the State of Ohio in order to get him into trouble again." (Complaint, ¶ 17.) According to plaintiff, defendant "played upon the Plaintiff's poor mental health condition and the fact that he was on psychotropic medications, and his ability to make clear, good decisions was severly [sic] impaired." (Complaint ¶ 17.) Plaintiff asserts that, rather than reactivate his license, defendant should have revoked his dental license as it "laid inactive and retired. There is no excuse for the Defendants actions in this case other than pure willful legal negligence." (Complaint, ¶ 18.)
 {¶ 6} Reduced to its essence, plaintiff's complaint alleges that defendant's willful negligence in improperly and unlawfully reinstating his dental license led plaintiff to practice dentistry on Medicaid patients when he legally could not do so, resulting in plaintiff's conviction for Medicaid fraud and theft in Licking County. Because, as he alleges, he "should NOT of been practicing dentistry in the State of Ohio. Period[,]" plaintiff asserts that but for defendant's negligence in reinstating his license, plaintiff would not have been charged with crimes, much less convicted of them. (Complaint, ¶ 25.) He seeks damages in the amount of $39,755,000 arising from the loss of his dental license and DEA certificates, the permanent repossession of his car and home, the destruction of his dental career and rebuilt reputation, the two additional felony convictions, and a number of other circumstances in which plaintiff finds himself.
 {¶ 7} In response to the allegations of plaintiff's complaint, defendant filed a motion to dismiss pursuant to Civ. R. 12(B)(6). Following plaintiff's response to the motion, *Page 4 
the trial court on June 25, 2008 issued an entry of dismissal concluding plaintiff's complaint failed to support any claim for relief recognized under Ohio law. Plaintiff appeals, contending the trial court improperly dismissed his complaint.
II. Assignment of Error {¶ 8} In deciding whether to dismiss a complaint pursuant to Civ. R. 12(B)(6) for failure to state a claim upon which relief can be granted, the trial court must presume all factual allegations in the complaint are true and construe the complaint in the light most favorable to the plaintiff, drawing all reasonable inferences in favor of the plaintiff.Mitchell v. Lawson Milk Co. (1988), 40 Ohio St.3d 190, 192. Before the court may dismiss the complaint, it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling the plaintiff to recovery. O'Brien v. Univ. Comm. Tenants Union, Inc.
(1975), 42 Ohio St.2d 242, syllabus. The dismissal of a complaint pursuant to Civ. R. 12(B)(6) presents a question of law which we review de novo. Shockey v. Wilkinson (1994), 96 Ohio App.3d 91, 94.
 {¶ 9} "In order to establish actionable negligence, one seeking recovery must show the existence of [a] duty, the breach of the duty, and injury resulting proximately therefrom." Schmitt v. Duke Realty,LP, 10th Dist. No. 04AP-251, 2005-Ohio-4245, at ¶ 7, quotingStrother v. Hutchinson (1981), 67 Ohio St.2d 282, 285. "Whether a duty exists in a negligence action is a question of law." Schmitt, citingBenton v. Cracker Barrel Old Country Store, Inc., 10th Dist. No. 02AP-1211, 2003-Ohio-2890, at ¶ 11.
 {¶ 10} "In negligence suits against the state, the Court of Claims must determine the existence of a legal duty using conventional tort principles that would be applicable if the defendant were a private individual or entity." Wallace v. Ohio Dept. of Commerce, *Page 5 Div. of State Fire Marshal, 96 Ohio St.3d 266, 2002-Ohio-4210, at paragraph one of the syllabus. Explaining, the court stated that "[d]uty, as used in Ohio tort law, refers to the relationship between the plaintiff and the defendant from which arises an obligation on the part of the defendant to exercise due care toward the plaintiff." Id. at ¶ 23, quoting Commerce Industry Ins. Co. v. Toledo (1989),45 Ohio St.3d 96, 98. "[T]he existence of a duty depends upon the foreseeability of the harm: if a reasonably prudent person would have anticipated that an injury was likely to result from a particular act, the court could find that the duty element of negligence is satisfied." Id. The Supreme Court of Ohio nonetheless acknowledged that "the concept of duty in negligence law is at times an elusive one." Id.
 {¶ 11} Applying those principles, we look to plaintiff's complaint, which contends defendant negligently reactivated plaintiff's dental license, resulting in injury to plaintiff as manifested in his subsequent indictment and conviction for Medicaid fraud. Here, we are unable to conclude that a reasonably prudent person would have anticipated that reactivating plaintiff's dental license likely would result in plaintiff's engaging in criminal behavior. Indeed, plaintiff does not assert defendant knew or should have known that reactivating his license would likely produce such a result, and nothing in plaintiff's reactivated license required that he serve Medicaid dental patients. It simply allowed him to practice dentistry in the state of Ohio in accordance with law.
 {¶ 12} Even if a common law duty does not arise, the duty element of negligence may be established through legislative enactment.Wallace, supra. While plaintiff here cites no specific legislative enactment, his complaint refers a "law" providing that a "dentist * * * who has been * * * retired for longer than 1 year MUST file an application for *Page 6 
reinstatement, pay the appropriate non-refundable fee, provide proof of having completed 40 hours of continuing education for dentists * * * proof of inoculation against or immunity to HBV virus and an FBI criminal background check." (Complaint, ¶ 21.) Premised on that language, plaintiff contends defendant violated its own rules or guidelines in sua sponte reactivating plaintiff's dental license.
 {¶ 13} Plaintiff's complaint does not indicate from where he derived the language set forth in ¶ 21 of his complaint. Even if it be valid, we question whether the language restricts defendant's actions. Instead, it appears to provide guidance to those seeking reinstatement and to advise of the necessary steps in a dentist's applying for reinstatement. If, however, we assume, without deciding, both that the language noted in ¶ 21 of plaintiff's complaint imparts a duty to defendant, and that defendant breached the duty by reinstating plaintiff's license in a manner contrary to such language, plaintiff's complaint nonetheless fails to set forth the necessary allegations regarding proximate cause. See Strother, supra.
 {¶ 14} Indeed, based on the allegations in plaintiff's complaint, plaintiff's own actions were the proximate cause of his problems. SeeState v. DiNozzi (Apr. 6, 2007), 5th Dist. No. 2006CA00044, 2007 Ohio App. LEXIS 1579, at *9 (stating "there was abundant evidence presented at trial demonstrating appellant was informed he could not participate in Medicaid program"). Plaintiff's own acts, conducted despite knowledge he was not to participate in the Medicaid program, gave rise to his criminal convictions. Cf. Carmichael v. Colonial Square Apts. (1987),38 Ohio App.3d 131, 132 (generally concluding an independent criminal act breaks the causal link between defendant's negligence and a plaintiff's injury). *Page 7 
 {¶ 15} Plaintiff nonetheless contends defendant "consciously" and "willfully," not accidently, reactivated plaintiff's license with the intention to "trick" plaintiff into practicing dentistry and to "get him into trouble again." (Complaint, ¶ 17.) Apart from the noted problem that nothing in the reactivation required plaintiff to treat Medicaid patients, plaintiff's allegations suffer yet another deficiency. Pursuant to R.C. 2743.16, civil actions against the state, permitted under sections R.C. 2743.01 to 2743.20, "shall be commenced no later than two years after the date of accrual of the cause of action or within any shorter period that is applicable to similar suits between private parties." "Ordinarily, a cause of action accrues and the statute of limitations begins to run at the time the wrongful act was committed." Collins v. Sotka (1998), 81 Ohio St.3d 506, 507.
 {¶ 16} Here, plaintiff was aware of defendant's action when it occurred. Accordingly, under the generally applied rule, plaintiff's cause of action accrued when defendant reinstated plaintiff's license. Because the reinstatement occurred in 2003, plaintiff's complaint, filed in 2008, is outside the statute of limitations set forth in R.C. 2743.16. Plaintiff, however, asserts the statute of limitations does not accrue until he sustains an injury. Because he was convicted on March 23, 2006, plaintiff contends his February 12, 2008 complaint is timely. Plaintiff's contentions are unpersuasive.
 {¶ 17} In April 2004, plaintiff was indicted for Medicaid fraud and theft premised on his "practicing dentistry unlawfully on Medicaid patients whom he was Federally Debarred from the Government [sic]." (Complaint, ¶ 23.) As of the date of his indictment, plaintiff knew he had sustained an injury even if the injury had not been finalized with a conviction as a result of practicing under his reactivated license. SeeBoyd v. Ohio State Med. Bd. (2001), 144 Ohio App.3d 384. *Page 8 
 {¶ 18} Plaintiff's contentions regarding the statute of limitations suggest comparison to cases involving a client who suffers negligence at the hands of his or her accountant. In such cases, the client frequently is not aware of the negligence until the IRS levies a penalty. While the matter may be subject to litigation to determine whether the penalty is well-grounded, some courts have concluded the cause of action for accountant negligence accrues when the penalty is levied. See Gray v.Estate of Barry (1995), 101 Ohio App.3d 764 (determining statute of limitations on accountant negligence accrued not at the time the tax return was negligently prepared but when the IRS levied a penalty assessment); but see Investors REIT One v. Jacobs (1989),46 Ohio St.3d 176, (concluding the statute of limitations governing claims of accountant negligence commence to run when the allegedly negligent act was committed).
 {¶ 19} Here, even if we accept plaintiff's argument that he did not sustain an injury when he realized defendant, on its own initiative, reinstated his license to practice dentistry, he at the least was aware of an injury when he was indicted, much as a client in an accountant negligence action is aware of an injury when the penalty is levied. Because plaintiff's complaint was not filed within two years of his indictment for Medicaid fraud, his action is untimely under R.C. 2743.16. See also Nilavar v. Mercy Health Systems-Western Ohio (S.D.Ohio 2006), 495 F.Supp.2d 816, affirmed, C.A.6 No. 06-3819, 244 Fed.Appx. 690, unreported (concluding a claim for intentional infliction of emotional distress accrued when the radiologist learned the hospital he served would be entering into an exclusive services agreement with a different radiologist, not when he subsequently was notified he was being replaced). *Page 9 
 {¶ 20} For the reasons set forth above, plaintiff's single assignment of error is overruled, and the judgment of the Court of Claims of Ohio is affirmed.
Judgment affirmed.
BROWN and SADLER, JJ., concur. *Page 1